IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DURREL PARKER,

        Plaintiff,

v.

DIVERSE STAFFING GEORGIA,
INC., *et al.*

        Defendants.

CIVIL ACTION NO.

1:20-cv-01913-TWT-RGV

## MAGISTRATE JUDGE'S
## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Durrel Parker ("Parker") initiated this action against Diverse Staffing

Georgia, Inc. ("Diverse"), a provider of temporary staffing services to its clients, on

May 3, 2020, [Doc. 1],[1] and on June 4, 2020, Diverse moved to dismiss Parker's

complaint, [Doc. 6].  Within 21 days after Diverse filed its motion to dismiss, Parker

amended his complaint against Diverse and added as co-defendants its clients, Nam

Dae Mun, LLC ("Nam Dae Mun"); WePackIt, Inc. ("WePackIt"); and Ole' Mexican

Foods, Inc. ("Olé"), collectively referred to as "defendants,"[2] alleging violations of

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Nam Dae Mun, WePackIt, and Olé are collectively referred to as the "client defendants."

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"); the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 et seq. ("RICO"); and the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 et seq. ("Georgia RICO"), as well as a claim for intentional infliction of emotional distress ("IIED"). [Doc. 7]. Diverse filed a partial motion to dismiss Parker's amended complaint, [Doc. 16], and, in light of Parker's amended complaint, the Court denied Diverse's motion to dismiss Parker's original complaint as moot, [Doc. 17]. The client defendants each have filed a motion to dismiss Parker's amended complaint, [Docs. 21, 24, & 26], and Diverse and Nam Dae Mun have also filed motions for sanctions, [Docs. 27 & 28]. Parker has not responded to any of the motions filed by the defendants, and the motions are therefore deemed to be unopposed. See LR 7.1(B), NDGa.[3] For the reasons that

---

[3] Parker has not responded to the defendants' arguments in their motions to dismiss about the claims he alleged in his amended complaint, and the "[f]ailure to respond to an opposing party's argument constitutes abandonment of that claim and warrants its dismissal." Demmons v. Fulton Cty., Civil Action File No. 1:09-CV-2312-TWT-WEJ, 2010 WL 3418325, at *11 (N.D. Ga. Aug. 2, 2010), adopted by 2010 WL 3418328, at *1 (N.D. Ga. Aug. 25, 2010) (citations omitted); see also Lewis v. Option One Mortg. Corp., CIVIL ACTION FILE NO. 1:13-CV-03973-AT-JFK, 2014 WL 12861081, at *5 (N.D. Ga. June 23, 2014), adopted by 2014 WL 12861186, at *1 (N.D. Ga. July 28, 2014) (citations omitted) (recommending that defendants' unopposed motion to dismiss plaintiff's complaint for failure to state a claim be granted based on Eleventh Circuit authority dismissing "claims as abandoned where the plaintiff failed to respond"); Bell v. Metro. Atlanta Rapid Transit Auth., Civil Action No. 1:10–CV–1117–JEC, 2011 WL 1225899, at *6 (N.D. Ga. Mar. 30, 2011) (citations omitted); Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (citation

follow, it is **RECOMMENDED** that defendants' motions to dismiss, [Docs. 16, 21, 24, & 26], be **GRANTED** and that Diverse and Nam Dae Mun's motions for sanctions, [Docs. 27 & 28], be **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Parker, a black male, was hired by Diverse as Director of Employee Services on November 17, 2017.  [Doc. 7 at 5 ¶ 11, 7 ¶¶ 27-28].[4]  Diverse is a provider of

---

omitted) (dismissing claims as abandoned where plaintiff failed to respond to defendants' motion to dismiss those claims); Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001), adopted at 1304 (citing Resolution Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").  "Nevertheless, even though lack of opposition is a sufficient basis in itself for granting th[e] motion[s] to dismiss, this Court [will] also review[] the motion[s] on the[ir] merits[.]"  White v. GA Dep't of Motor Vehicle Safety, Civil Action File No. 1:06-CV-0124-TWT, 2006 WL 1466254, at *1 (N.D. Ga. May 19, 2006); see also Trainer v. Nix, Civil Action No. 1:07–CV–1227–JOF, 2009 WL 2370677, at *1 (N.D. Ga. July 29, 2009) (considering merits of defendants' motions even though they were unopposed); Eley v. Morris, 390 F. Supp. 913, 917-18 (N.D. Ga. 1975) (evaluating plaintiffs' motions on the merits despite defendants' failure to file responses in opposition).

[4] The factual background is taken from the pleadings and exhibits and does not constitute findings of fact by the Court.  Parker has filed certain exhibits with his amended complaint, [Docs. 7-1, 8 & 9], and the Court will consider the exhibits since they are "central to [Parker's] claim[s] and the authenticity of the document[s] is not challenged," Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished) (citations omitted); see also Bruce v. U.S. Bank Nat'l Ass'n, 770 F. App'x 960, 964 (11th Cir. 2019) (per curiam) (unpublished) (citation and internal marks omitted) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."); Muhammad v. Deutsche Bank Nat'l Tr. Co., CIVIL

temporary staffing services to its clients, including the client defendants, each of which was a client of Diverse throughout Parker's employment. See [id. at 2-3, 8 ¶ 33]. Parker alleges that "[w]hile employed by Diverse, [he] gradually learned of Diverse's efforts to recruit and employ undocumented workers." [Id. at 2]. He asserts that "Diverse knowingly accepted fraudulent identification documents from prospective employees and used those documents to assert that the individual was lawfully authorized to work in the United States," and that "[d]espite Georgia law requiring the use of e-Verify,[5] Diverse did not use e-Verify for individuals suspected to be undocumented, [and] instead us[ed] a commercial internet background check service," [id.]; see also [id. at 13-14 ¶¶ 60, 62], although Diverse did utilize e-Verify to confirm employment eligibility for non-Hispanic applicants and employees, [id. at 14 ¶ 63]. Parker adds that the client defendants "demonstrated

_____

ACTION NO. 1:17-CV-4330-MLB-JSA, 2018 WL 3702460, at *4 (N.D. Ga. May 11, 2018), adopted by 2018 WL 4473147, at *3 (N.D. Ga. Sept. 6, 2018) (citation omitted) (noting that the court could consider various documents attached to plaintiff's complaint as "part of the pleadings for all purposes"); Clark v. Bibb Cty. Bd. of Educ., 174 F. Supp. 2d 1369, 1370 (M.D. Ga. 2001) (citation omitted) ("A court evaluating a motion to dismiss for failure to state a claim upon which relief can be granted must focus its analysis on the face of the complaint, but it may also consider any attachments to the complaint[.]").

5 "E-Verify is an internet-based system that compares information entered by an employer from an employee's Form I-9, Employment Eligibility Verification, to records available to the [United States] Department of Homeland Security and the Social Security Administration to confirm employment eligibility." [Doc. 7 at 13 ¶ 59].

a preference for Hispanic undocumented temporary workers" and that all the defendants together "conspired to identify prospective Hispanic undocumented individuals, accept identification documents known or believe[d] to be fraudulent or stolen and use those documents as a basis to employ Hispanic undocumented individuals." [Id. at 3].

Diverse's account with Nam Dae Mun was managed by Claudia Prado ("Prado") and Jason Owens ("Owens"), and Diverse's primary point of contact at Nam Dae Mun was Kathy Rivers ("Rivers"), a Nam Dae Mun employee. [Id. at 8-9 ¶¶ 34, 38-39]. Parker contends that George Apgar ("Apgar")[6] instructed Prado and Owens to recruit and hire individuals they knew or had reason to know did not have lawful authority to work in the United States, and they placed the undocumented workers with the client defendants "with their knowledge and at their request." [Id. at 9 ¶¶ 35-36]. The client defendants "refused to allow other Diverse staff to engage their accounts unless they were known to be open [] to hiring undocumented workers." [Id. at 9 ¶ 37].

Parker alleges that Diverse established a staffing team that was dedicated exclusively to recruiting undocumented Hispanic individuals for employment by the

---

[6] Parker's amended complaint does not contain any specific allegations clarifying Apgar's identity, see generally [Doc. 7], but his charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") asserts that Apgar was the managing partner for Diverse, [Doc. 7-1 at 2].

client defendants.  [Id. at 13 ¶¶ 57-58].  He claims that "Diverse sent dozens of its undocumented temporary employees" to the client defendants "at their request," [id. at 12 ¶¶ 54-56 (citations omitted)], and that the Social Security Administration ultimately "flagged hundreds of Diverse employees for having mismatched Social Security [n]umbers," [id. at 12 ¶ 53 (citation omitted)].  Parker asserts that after "learning or acquiring reason to believe that the Social Security number or identification documents the employee provided to Diverse [] was invalid or fraudulent," Diverse continued to employ the affected staff.  [Id. at 14 ¶ 65].

Parker alleges that he "vocally and actively opposed Diverse's unlawful employment practices, including its overt preference for Hispanic undocumented workers which resulted in individuals of other national origins unlawfully [being] denied employment opportunities."  [Id. at 2-3].  He explains that he opposed the practice in January 2018, when he informed Sheri K. Marr ("Marr"), the managing director of Diverse, that "he had become aware of Diverse['s ] efforts to recruit and employ Hispanic undocumented workers and that he would not participate in that practice"; in September 2018, "when he advised Apgar that he would not participate in Diverse['s ] practice of extending preferential treatment to undocumented Hispanic applicants for employment"; and in December 2018, when he "informed Apgar that he would not participate or assist Apgar's Hispanic Recruitment Team in any manner because he found it to be an unethical practice."  [Id. at 8 ¶ 30, 16-17 ¶¶

72, 74, 76].  In January 2019, "Smarr[7] informed Parker that Apgar had advised her that he believed that Parker was 'racist' because he 'refused to hire Hispanics.'"  [Id. at 17 ¶ 78].

On July 17, 2019, Parker asked Owens and Prado to request that Rivers copy the account, "diversenorcross@diversestaffing.com," on all email correspondence with Diverse "to ensure that other Diverse employees in the Norcross office were aware of actions and requests on the Nam Dae Mun account" in an effort "to increase transparency on the Nam Dae Mun account[.]"  [Id. at 10-11 ¶¶ 45-46 (citation omitted)]; see also [Doc. 8 at 105-06].  Owens then emailed Parker on July 23, 2019, indicating that he had sent multiple emails to Rivers requesting that the account be copied on all correspondence with Diverse and that be believed she was not doing so out of spite.  [Doc. 7 at 11 ¶ 47 (citation omitted)]; see also [Doc. 8 at 102].

On August 7, 2019, Rivers emailed Owens to notify Diverse that Nam Dae Mun would no longer be using its staffing services.  [Id. at 10 ¶ 41].  She explained that this decision was made due to interactions with Parker, as his communications with

---

7 Parker's amended complaint repeatedly references an individual named "Smarr" without providing any additional identifying information.  See generally [Doc. 7].  However, this appears to be a typographical error that Parker intended to refer to "Marr," as he specifically mentions January 2018 statements made to Marr but subsequently refers to them as "January 2018 statements to Smarr."  [Id. at 16 ¶¶ 72-73].  Moreover, the reference to "Marr" may also be a typographical error, as Parker's EEOC charge identifies the Managing Director of Diverse as "Sherri Mari."  [Doc. 7-1 at 2].

Prado and Owens, which she overheard during telephone conversations, had been rude, [id. at 10 ¶¶ 42-43]; see also [id. at 18 ¶ 82 (citation omitted)], although Parker indicates that he never spoke to Rivers or directly interacted with her, [id. at 9 ¶ 40]. Parker asserts that the client defendants "fabricated statements about [him] at the request of Diverse to justify terminating his employment because of his opposition to Diverse's practice of employing undocumented workers and treating Hispanic employees disparately." [Id. at 15 ¶ 70].

Parker filed a charge of discrimination with the EEOC on September 4, 2019, alleging that Diverse discriminated against him because of his race and retaliated against him for opposing employment practices made unlawful by Title VII. [Id. at 4-5 ¶¶ 7-8 (citation omitted)]; see also [Doc. 7-1 at 2]. On September 26, 2019, Marr notified Parker that he was being terminated "because Nam Dae Mun elected to move their business to another agency." [Doc. 7 at 19 ¶ 84]; see also [id. at 7 ¶ 29]. The EEOC issued a Notice of Suit Rights on February 3, 2020. [Doc. 7 at 5 ¶ 9 (citation omitted)]; see also [Doc. 7-1 at 4].

Parker filed a complaint against Diverse in this Court on May 3, 2020, asserting claims under Title VII, RICO, and Georgia RICO. [Doc. 1]. Diverse filed a motion to dismiss, [Doc. 6], and within 21 days, Parker filed an amended complaint, [Doc. 7], adding the client defendants and explicitly asserting causes of action for retaliation under Title VII (Count I) and violations of federal RICO (Count II), while also

referencing violations of Georgia RICO and a state law claim for IIED against Diverse, [id. at 1-2, 15-22 ¶¶ 71-99]. In light of Parker's amended complaint, the Court denied Diverse's motion to dismiss the original complaint as moot. [Doc. 17]. Diverse filed a partial motion to dismiss Parker's amended complaint, requesting that all claims asserted against it, except for Parker's Title VII retaliation claim, be dismissed. [Doc. 16]. The client defendants each also have filed a motion to dismiss Parker's amended complaint in its entirety, [Docs. 21, 24, & 26], and Diverse and Nam Dae Mun have filed motions seeking sanctions against Parker and his counsel under Federal Rule of Civil Procedure 11, [Docs. 27 & 28]. Parker has not responded to any of the motions filed in this case, and since the time to do so has passed, the pending motions are deemed to be unopposed, see LR 7.1(B), NDGa., and are now ripe for ruling.

## II.   DISCUSSION

### A.   Motions to Dismiss, [Docs. 16, 21, 24, & 26]

#### 1.   *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court must accept Parker's allegations as true and construe the amended complaint in his favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993);

9

Tapsoba v. Khiani Alpharetta, LLC, Civil Action No. 1:13–CV–1519–RWS, 2013 WL 4855255, at *1 (N.D. Ga. Sept. 11, 2013).[8]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal marks omitted); see also Lenbro Holding Inc. v. Falic, 503 F. App'x 906, 909 (11th Cir. 2013) (per curiam) (unpublished) (alterations in original) (citation omitted) ("Allegations entitled to no assumption of truth include '[l]egal conclusions without adequate factual support' or '[f]ormulaic recitations of the elements of a claim.'").

"Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (footnote and citation omitted), as "a

---

[8] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'"  Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Additionally, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.'"  Id. (alteration in original) (footnote omitted) (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).  Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

complaint must plead 'enough facts to state a claim to relief that is plausible on its face,'" Cisneros v. Petland, Inc., 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

Id. at 678-79 (last alteration in original) (citations omitted); see also Evans v. Ga. Dep't of Behavioral Health & Developmental Disabilities, CV 415-103, 2018 WL 4610630, at *3 (S.D. Ga. Sept. 25, 2018) (alterations in original) (citation and internal marks omitted) ("Although there is no probability requirement at the pleading stage, something beyond . . . mere possibility . . . must be alleged.").

"While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is

improbable,'" Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 556), "[t]o state a plausible claim for relief, a plaintiff must go beyond merely pleading the 'sheer possibility' of unlawful activity by [] defendant[s] and so must offer 'factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged,'" Stabb v. GMAC Mortg., LLC, 579 F. App'x 706, 708 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his . . . claim."  GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."  Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted); see also Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam) (citation omitted); Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

Additionally, "when a complaint is grounded in fraud, as it appears [Parker's amended] complaint is, the complaint must comply with Fed.R.Civ.P. 9(b)'s heightened pleading requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Roundtree v. Countrywide Home Loans, Inc., No. 3:09-cv-189-J-32TEM, 2009 WL 5215334, at *4

(M.D. Fla. Dec. 29, 2009) (second alteration in original) (internal marks omitted). "To satisfy Rule 9(b)'s 'particularity' standard, [Parker's amended] complaint should 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled [Parker]; and (4) what the [d]efendants gain[ed] by the alleged fraud.'" Id. (quoting W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (per curiam) (unpublished)). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of [its] alleged participation in the fraud." Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) (first and second alterations in original) (citation and internal marks omitted).

### 2. *Analysis*

Parker's amended complaint specifies only two counts: one for retaliation under Title VII and one for a violation of RICO. [Doc. 7 at 15-22 ¶¶ 71-99]. However, the first paragraph of his amended complaint also references violations of Georgia RICO and a claim for IIED, and the facts section of his amended complaint mentions that he filed a charge of discrimination with the EEOC asserting claims against Diverse for both race discrimination and retaliation in violation of Title VII. [Id. at 1-2, 4-5 ¶¶ 7-8 (citation omitted)]. Diverse has filed a partial motion to dismiss Parker's amended complaint for failure to state a plausible claim as to all of these claims,

except for his Title VII retaliation claim, [Doc. 16], and the client defendants also have moved to dismiss the amended complaint in its entirety for failure to state a plausible claim, [Docs. 21, 24, & 26].

### i.      Title VII Retaliation Claims

In Count I of his amended complaint, Parker alleges that he was terminated in retaliation for "oppos[ing] employment practices made unlawful by Title VII when he told Marr that he had become aware of Diverse['s ] efforts to recruit and employ Hispanic undocumented workers and that he would not participate in that practice"; "when he advised Apgar that he would not participate in Diverse['s ] practice of extending preferential treatment to undocumented Hispanic applicants for employment"; and when he "informed Apgar that he would not participate or assist [his] Hispanic Recruitment Team in any manner because he found it to be an unethical practice." [Doc. 7 at 16-17 ¶¶ 72, 74, 76, 19 ¶¶ 84-85].[9] The client defendants

---

[9] While Parker asserts that he filed a charge of discrimination with the EEOC alleging race discrimination and retaliation in violation of Title VII, [Doc. 7 at 5 ¶ 8], he does not reference a claim of race discrimination elsewhere in his amended complaint and does not identify any facts to support such a claim, see generally [Doc. 7]. Accordingly, to the extent that Parker intended to assert a Title VII race discrimination claim in his amended complaint, it is **RECOMMENDED** that it be **DISMISSED** for failure to state a claim. See Enadeghe v. Ryla Teleservices, Inc., Civil Action File No. 1:08–CV–3551–TWT, 2010 WL 481210, at *7 (N.D. Ga. Feb. 3, 2010), adopted at *1 (dismissing plaintiff's Title VII claim for racially discriminatory termination where she did "not allege any facts indicating that unlawful race discrimination was the reason for her termination").

each move to dismiss this claim, asserting that Parker failed to exhaust his administrative remedies by including allegations against them in his charge of discrimination filed with the EEOC, and that, in any event, they were not his "employers" as required to state a claim under Title VII.  [Doc. 21-1 at 6-7; Doc. 24-1 at 8-13; Doc. 26 at 3]; see also [Doc. 26 at 1 (joining in and adopting by reference the motions to dismiss filed by Olé and Nam Dae Mun)].[10]

"Prior to filing a Title VII action . . . a plaintiff must file a charge of discrimination with the EEOC."  Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam) (citation omitted); see also 42 U.S.C. § 2000e-5(e)(1).  A "plaintiff who does not plausibly allege that []he successfully exhausted administrative remedies cannot state a claim under Title VII . . ., and [his] claims would therefore be subject to dismissal pursuant to Rule 12(b)(6)."  Harris v. Bd. of Trs. Univ. of Ala., 846 F. Supp. 2d 1223, 1238 (N.D. Ala. 2012) (citations omitted).  Generally, "[parties] not directly named in the [] EEOC charge cannot be sued in a subsequent civil action."  Pollard v. Mark, Civil Action No. 1:07-CV-02408-CC-LTW, 2008 WL 11334021, at *3 (N.D. Ga. Apr. 3, 2008), adopted by 2008 WL 11336874, at *1 (N.D. Ga. Apr. 30, 2008) (citation omitted).  However, "[w]here the purposes of [Title VII] are fulfilled, [parties] unnamed in the EEOC charge may be subjected to the

_____

[10] Diverse does not move to dismiss Parker's retaliation claim.  [Doc. 16-1 at 8 n.6].

jurisdiction of federal courts." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1358-59 (11th Cir. 1994) (citation omitted).   To determine whether the purposes of Title VII are fulfilled, the Court looks to several factors, including, but not limited to:

> (1) the similarity of interest between the named party and the unnamed part[ies]; (2) whether the plaintiff could have ascertained the identity of the unnamed part[ies] at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charge[]; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed part[ies] actually [were] prejudiced by [their] exclusion from the EEOC proceedings.

Id. at 1359 (citations omitted).

Parker does not allege that he ever filed a charge of discrimination against the client defendants.  See generally [Doc. 7].  Instead, his allegations focus exclusively on the charge of discrimination filed against Diverse on September 4, 2019.  [Id. at 4-5 ¶¶ 7-8 (citation omitted)]; see also [Doc. 7-1 at 2].  This charge states:

> I was hired by [Diverse] on or about November 27, 2017.  My most recent position was Director of Employee Services.  During my employment, I complained to [] Apgar, Managing Partner and Sherri Mari, Managing Director, that [c]lients were requesting that we only send Hispanic individuals to their sites for job assignments and I was not going to honor these requests, but would send the best qualified.  Subsequently, I was removed from accounts, and ultimately discharged for opposing discrimination.
>
> The reason given for the reassignments by [] Apgar, was 'we will do what the [c]lient asks.'  The reason given for my discharge by Sherri Mari, was 'the company lost an account and I was being let go.'

> I believe I have been discriminated against because of my race, Black, and retaliated against for engaging in protected activity, in violation of Title VII[.]

[Doc. 7-1 at 2]. Although the EEOC charge references Diverse's clients and Parker's amended complaint asserts that the client defendants were clients of Diverse, there is no mention of the client defendants by name in the EEOC charge, and Parker did not assert any claims against the client defendants in the EEOC charge. See [id.]. Because he has not alleged that he filed a charge against the client defendants, it must be determined whether the purposes of Title VII have been fulfilled such that Parker can assert his Title VII claims against these unnamed parties.

The first Virgo factor requires the Court to consider whether "under the circumstances, the interests of a named party are so similar as to the unnamed part[ies] that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed part[ies] in the EEOC proceedings." Giannola v. WW Zephyrhills, LLC, No. 8:10–CV–2541–T–17TBM, 2011 WL 2784617, at *4 (M.D. Fla. July 14, 2011) (citation and internal marks omitted). The allegations in the amended complaint show that the client defendants are merely clients of Diverse and that the defendants are entirely separate entities. See [Doc. 7 at 3, 8 ¶ 33]. "Thus, the [amended c]omplaint suggests that [d]efendants' sole legal relationship involved the placement of temporary employees, rather than any

employer-employee/parent-subsidiary relationship or ownership interest." Pollard, 2008 WL 11334021, at *4.

Parker either knew or could have determined the identities of these parties before he filed his EEOC charge given his previous employment with Diverse as his claims arise in part from his opposition to the client defendants' alleged practice of requesting undocumented Hispanic employees and Diverse's alleged practice of fulfilling those requests, see generally [Doc. 7], and his EEOC charge similarly alleged that  he was "discharged for opposing discrimination" when he complained that Diverse's "[c]lients were requesting that [they] only send Hispanic individuals to their sites for job assignments and [he] was not going to honor th[ose] requests," [Doc. 7-1 at 2].  Moreover, "the documents incorporated in the [amended c]omplaint indicate that the EEOC notified only [Diverse] of its determination regarding [Parker's] charge," and the amended complaint "presents no allegation that [d]efendants are so closely related that one's knowledge could be imputed to the other, or that [the client defendants] somehow had notice of [Parker's] EEOC charge against [Diverse.]" Pollard, 2008 WL 11334021, at *4 (citation omitted); see also [Doc. 7-1 at 4]. Thus, the client defendants were "prejudiced by facing a lawsuit without notice of [Parker's] claims from [Parker] or the EEOC and without an opportunity to participate in the conciliation process." Taylor v. People Sales & Profit Co., CASE NO. 4:18-CV-232 (CDL), 2019 WL 4861892, at *2 (M.D. Ga. Oct. 2, 2019). "The [C]ourt

18

finds that it is not plausible to conclude, based on the allegations in [Parker's amended] [c]omplaint and the undisputed EEOC documents provided by [Parker], that []he has exhausted [his] administrative remedies as to the [client defendants]" and "[w]ithout this administrative prerequisite being met, [his] Title VII . . . claims against [them] are due to be dismissed." Harris, 846 F. Supp. 2d at 1240.

The client defendants also correctly note that Parker has not plausibly alleged that he was employed by them as required to state his Title VII retaliation claims against them. [Doc. 21-1 at 6-7; Doc. 24-1 at 8-10; Doc. 26 at 3]. "Both the language and the history of Title VII show that the purpose of the statute is for the prevention of 'unlawful employment practice'-a prerequisite of which is an employer-employee relationship." Kolczynski v. United Space All., LLC, No. 6:04CV716ORL-18KRS, 2005 WL 2291706, at *2 (M.D. Fla. Sept. 20, 2005) (citation omitted) (quoting 42 U.S.C. § 2000e-2). "By its terms, [Title VII's] anti-retaliation provision [] require[s] a showing that the defendant[s] discriminated against [their] *employee or applicant for employment* because that *employee or applicant* engaged in protected activity." Tolar v. Cummings, No. 2:13–cv–00132–JEO, 2014 WL 3974671, at * 9 (N.D. Ala. Aug. 11, 2014), adopted at *1 (emphasis added) (alterations, citations, and internal marks omitted). Accordingly, a "retaliation claim pursuant to Title VII 'can only be brought by an employee against his employer.'" Hilliary v. FlightSafety Int'l, Inc., CIVIL ACTION FILE NO. 1:17-CV-00999-AT-WEJ, 2017 WL 11316735, at *5 (N.D. Ga. Oct.

19

20, 2017), adopted by 2017 WL 11316993, at *1 (N.D. Ga. Nov. 14, 2017) (footnote

omitted) (quoting Peppers v. Cobb Cty., 835 F.3d 1289, 1297 (11th Cir. 2016)); see also

Llampallas v. Mini-Cirs., Lab, Inc., 163 F.3d 1236, 1243 (11th Cir. 1998) ("Congress

intended to limit the scope of [Title VII] to specific employment relationships; thus,

the statute provides relief only against 'employers' as defined under the statute.").

Parker's amended complaint alleges that he was employed by Diverse and that

the remaining defendants were merely clients of Diverse throughout his

employment. [Doc. 7 at 2-3, 5 ¶ 12, 7-8 ¶¶ 27-28, 33]. Additionally, Parker's Title VII

claim is based on his alleged retaliatory termination by *Diverse*, not by the client

defendants. [Id. at 7 ¶ 29, 15, 19 ¶¶ 84-85, 87]. Indeed, Parker specifically notes that

it was "*Diverse['s]* decision to terminate [his] employment[.]" [Id. at 19 ¶ 85

(emphasis added)]. Accordingly, because Parker has not plausibly alleged any

employment relationship with the client defendants, his Title VII retaliation claims

fail.[11] See Hilliary, 2017 WL 11316735, at *5 (dismissing plaintiff's Title VII retaliation

---

[11] Nam Dae Mun also correctly notes that Parker's amended complaint does not allege "facts to support any [] of the theories this Circuit has recognized in order to find multiple parties to be considered a [p]laintiff's employer under Title VII." [Doc. 24-1 at 8]; see also Kolczynski, 2005 WL 2291706, at *3-4 (citations omitted) (explaining that to determine whether an employment relationship exists, courts in the Eleventh Circuit may apply: (1) common law principles of agency, which focus on the level of control exerted over the employee; (2) the joint employer test, which considers whether "two companies contract[ed] with each other for the performance of a task, with one company retaining control over the other's employees"; and (3) the single employer or integrated enterprise test, which considers the degree to

claim where she failed to allege that the defendant was her employer or that it "was a decision-maker or exercised any control over any alleged adverse employment action taken against her").   Therefore, it is **RECOMMENDED** that the client defendants' motions to dismiss, [Docs. 21, 24, & 26], be **GRANTED** as to Parker's Title VII retaliation claims.[12]

### ii.   RICO Claims

In Count II of his amended complaint, Parker alleges that "[d]efendants engaged in a pattern of racketeering activity by conspiring to engage in thousands of violations of 18 U.S.C. § 1546, 18 U.S.C. § 1028(a)(4), and § 1028(a)(7) before, during, and after [his] employment," [Doc. 7 at 22 ¶ 97], and that he was terminated by Diverse because of his opposition to defendants' racketeering activities, [id. at 22 ¶ 98].  Although not included in a specific count, Parker also references a Georgia RICO claim in the first paragraph of his amended complaint.  [Id. at 1-2].  Defendants move

---

which two ostensibly separate entities are highly integrated with respect to their ownership and operations and thus, may be treated as a single entity).

[12] Olé also argues that Parker's retaliation claim fails on its merits because Title VII does not offer a remedy for retaliation due to opposition to the alleged hiring of undocumented workers.  [Doc. 21-1 at 8-11].  Because Parker's retaliation claim is subject to dismissal for the reasons already discussed, the Court need not address this argument.  See Maeder v. Tom Bush Auto-Plex, Inc., No. 3:14–cv–335–J–34PDB, 2015 WL 1277925, at *3 n.3 (M.D. Fla. Mar. 20, 2015) ("Because the Court concludes that [p]laintiffs cannot maintain their Title VII . . . claims against [d]efendants based on the lack of an employment relationship, the Court need not address [d]efendants' remaining arguments as to the sufficiency of these claims.").

to dismiss Parker's federal and state RICO claims, arguing that he lacks standing to bring these claims because he failed to allege proximate causation between defendants' racketeering conduct and any injury he suffered, and that his fraud-based claims fail to satisfy the particularity standard required under Rule 9 of the Federal Rules of Civil Procedure.  [Doc. 16-1 at 15-24; Doc. 21-1 at 11-18; Doc. 24-1 at 13-21; Doc. 26 at 3-4].

"Congress enacted RICO in 1970, prohibiting racketeering activity connected to interstate commerce," Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016) (citation omitted), and making it "'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt,'" id. (quoting 18 U.S.C. § 1962(c)).   The statute also makes it "'unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.'"   Cox v. Cmty. Loans of Am., Inc., No. 4:11-CV-177 (CDL), 2014 WL 1216511, at *11 (M.D. Ga. Mar. 24, 2014), aff'd, 625 F. App'x 453 (11th Cir. 2015) (per curiam) (unpublished) (quoting 18 U.S.C. § 1962(d)).  "In addition to creating criminal penalties for racketeering activities, the statute also created a private, civil cause of action," and thus, "'[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in

any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'" Ray, 836 F.3d at 1348  (alterations in original) (quoting 18 U.S.C. § 1964(c)).

Similarly, "Georgia's RICO statute makes it unlawful for any person, 'through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.'" CryoLife, Inc. v. Medafor, Inc., CIVIL ACTION NO. 1:09-CV-1150-CAP, 2010 WL 11507024, at *2 (N.D. Ga. Aug. 9, 2010) (quoting O.C.G.A. § 16-14-4(a)).  It is also unlawful for any person to conspire to violate subsection (a), O.C.G.A. § 16-14-4(c), and the civil provision provides that "'[a]ny person who is injured *by reason of* any violation of Code Section 16–14–4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages,'" Maddox v. S. Eng'g Co., 500 S.E.2d 591, 593 (Ga. Ct. App. 1998) (quoting O.C.G.A. § 16-14-6(c)).[13]

---

[13] "The Georgia RICO provisions are modeled after the federal provisions, and the same analysis is generally applied to both." Simpson v. Sanderson Farms, Inc., Civil Action No. 7:12-CV-28 (HL), 2012 WL 4049435, at *1 n.3 (M.D. Ga. Sept. 13, 2012) (citation omitted); see also Maddox, 500 S.E.2d at 594 (citations and internal marks omitted) ("[B]ecause the state RICO act is modeled upon and closely analogous to the federal RICO statute, [the Court] look[s] to federal authority[.]").  Since Parker has not provided specific allegations to support his Georgia RICO claim, the Court will assume that these claims are based on the same predicate acts, and "if the Court finds that [Parker has] not stated a claim under a particular predicate act, the Georgia RICO claims based on that predicate act fail." Simpson, 2012 WL 4049435, at *1 n.3;

To establish a RICO violation, Parker must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to 'business or property' (6) that was 'by reason of' the substantive RICO violation." Corcel Corp. v. Ferguson Enters., Inc., 551 F. App'x 571, 575 (11th Cir. 2014) (per curiam) (unpublished) (footnote and citation omitted); see also Ray v. Spirit Airlines, Inc., 767 F.3d 1220, 1224 (11th Cir. 2014) (citations and internal marks omitted) (stating that to recover on a RICO claim, "a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts" and that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"); Avirgan v. Hull, 932 F.2d 1572, 1578 (11th Cir. 1991) (citation omitted) (explaining that a RICO claim requires the satisfaction of "three essential elements: (1) a violation of section 1692; (2) injury to business or property; and (3) that the violation caused the injury"). "A pattern of racketeering activity . . . requires at least two acts of racketeering activity. An act of racketeering is commonly referred to as a predicate act . . . [and] is shown when a racketeer commits at least two distinct but related predicate acts." Boyd v. TTI Floorcare N.

_____

see also Harris v. Orange S.A., CIVIL ACTION FILE NO. 1:14-CV-641-TWT, 2014 WL 11822768, at *2 (N.D. Ga. Nov. 28, 2014), aff'd, 636 F. App'x 476 (11th Cir. 2015) (per curiam) (unpublished) (footnote omitted) ("[I]f a party lacks standing to assert a federal RICO claim, []he also lacks standing to assert a Georgia RICO claim.").

Am., 230 F. Supp. 3d 1266, 1280 (N.D. Ala. 2011), aff'd, 476 F. App'x 238 (11th Cir. 2012) (per curiam) (unpublished) (second and third alterations in original) (citation and internal marks omitted); see also Wylie v. Denton, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013) (citation omitted).

Defendants argue that Parker's RICO claims fail because he has not plausibly identified a causal connection between any injury to himself and the alleged racketeering activity.  [Doc. 16-1 at 20-24; Doc. 21-1 at 16-18; Doc. 24-1 at 17-19; Doc. 26 at 4].[14]  To satisfy the causation element and establish standing to bring a RICO claim, "[p]roximate cause is [] required."  Holmes v. Sec. Inv. Protection Corp., 503 U.S. 258, 268 (1992).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steep Supply Corp., 547 U.S. 451, 461 (2006).  Accordingly, "proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged."  Corcel Corp., 551 F. App'x at 576 (citation and internal marks omitted); see also Ironworkers Local Union 68 v.

_____

[14] Nam Dae Mun also argues that while Parker's amended complaint "contends he was terminated in retaliation for opposing [] Diverse's employment practices" in violation of Title VII, he "never gets around to making any allegations regarding injury he sustained as a result of [defendants'] alleged racketeering activity."  [Doc. 24-1 at 18].  However, in Count II of Parker's amended complaint, which sets forth his federal RICO claim, he specifically asserts that "Diverse terminated [his] employment because of his opposition to [d]efendants['] racketeering and conspiracies."  [Doc. 7 at 22 ¶ 98].

AstraZeneca Pharms., LP, 634 F.3d 1352, 1358-59 (11th Cir. 2011) (citation omitted). "Thus, to survive a motion to dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that []he was injured," and instead "must show that [his] injury was the direct result of a predicate act targeted toward [him], such that []he was the intended victim." Wylie, 746 S.E.2d at 694 (citations omitted); see also Corcel Corp., 551 F. App'x at 575 (citation omitted) ("Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations.").

Parker identifies three predicate acts that he contends resulted in his termination: violations of 18 U.S.C. §§ 1028(a)(4), 1028(a)(7), and 1546.  [Doc. 7 at 20-22 ¶¶ 90, 94, 96-97].  Section 1028 pertains to fraud and related activity in connection with identification documents, authentication features, and information, 18 U.S.C. § 1028, and § 1546 pertains to fraud and misuse of visas, permits, and other documents, 18 U.S.C. § 1546.  Parker alleges that defendants "knowingly and repeatedly violated 18 U.S.C. § 1028(a)(7) by knowingly possessing fraudulent[] or stolen means of identification of other individuals presented as identification of prospective and current Diverse [] employees without the lawful authority of the owner of the identification"; that the client defendants "encouraged Diverse to employ and send them Hispanic undocumented workers"; that Diverse accepted false or fraudulent identification documents from employees nearly every day, but did not use the e-

Verify system to confirm the employees' ability to be lawfully employed in the United States, despite knowing or having reason to know of the false or fraudulent nature of the identification documents; that defendants "conspired to use false or fraudulent identification documents to defraud the United States by paying undocumented employees wages without remitting the required federal payroll taxation to the Internal Revenue Service in violation of 18 U.S.C. § 1028(a)(4)"; that defendants "conspired to violate[] 18 U.S.C. § 1546 by knowingly using, attempting to use, and/or accepting documents used for entry into or as evidence of authorized employment in the United States, knowing them to be forged, counterfeited, altered, or falsely made"; and that these racketeering activities occurred "before, during, and after [his] employment" with Diverse.  [Doc. 7 at 20-22 ¶¶ 90-94, 96-97].  Parker asserts that he was injured by this conduct as "Diverse terminated [his] employment because of his opposition to [d]efendants['] racketeering and conspiracies."  [Id. at 22 ¶ 98].

Diverse asserts that O'Malley v. O'Neill, 887 F.2d 1557 (11th Cir. 1989), is instructive on this issue, [Doc. 16-1 at 23], and the Court agrees.  In O'Malley, the plaintiffs brought RICO claims based on predicate acts of mail fraud, but their complaint failed to "demonstrate that they were injured by the alleged acts of mail fraud" and "[i]nstead, [] allege[d] that their injury arose as a result of their refusal to participate in or to conceal the fraudulent scheme."  887 F.2d at 1561.  "Therefore, by

their own allegations, the proximate cause of the plaintiffs' injuries was [the] decision to fire them for refusing to participate in or to conceal the scheme—not the mail fraud scheme itself." Id. (citations omitted).  The Eleventh Circuit explained that though it "may well [have been] true that the commission of the predicate acts constituted the 'but for' cause of the firings," such a "tenuous [] relation between the harm and the predicate acts [was] not sufficient to confer standing," as "RICO does not provide a remedy for every injury that may be traced to a predicate act," but instead requires proximate cause between the injury and the act. Id. (citations omitted).  The Eleventh Circuit also found it instructive that the plaintiffs did not "allege that they were the intended victims of the mail fraud scheme," and concluded that their injury resulted "not 'by reason of' the RICO violation, but rather from the tangentially related decision to fire them." Id. at 1563.

"As in O'Malley, [Parker's] alleged injury resulted from [Diverse's] . . . decision to discharge [him]." Wagner v. Lee Cty., No. 2:14-cv-29-FtM-38CM, 2014 WL 3695383, at *6 (M.D. Fla. July 24, 2014), aff'd, 678 F. App'x 913 (11th Cir. 2017) (unpublished).  Indeed, Parker explicitly states that his "ongoing opposition and refusal to cooperate with the [d]efendants' conspiracy is the proximate cause for [his] termination[.]" [Doc. 7 at 3].  "In other words, [his] injury did not result from [defendants'] alleged racketeering activity but from [his] actions in opposition to . . . their conduct," and thus, his "injury did not result 'by reason of' [any] RICO

violation, 'but rather from the tangentially related decision to fire [him].'" <u>Wagner</u>, 2014 WL 3695383, at \*6 (citations omitted); <u>see also</u> <u>Morast v. Lance</u>, 631 F. Supp. 474, 481 (N.D. Ga. 1986), <u>aff'd</u>, 807 F.2d 926 (11th Cir. 1987), <u>abrogated on other grounds as recognized by</u> <u>O'Neal v. Garrison</u>, 263 F.3d 1317, 1321-22 (11th Cir. 2001) (citation omitted) (concluding that the plaintiff could not state a claim under RICO where he asserted that "he was injured in the loss of his employment following his effort to report the predicate acts," not that he was injured by the predicate acts themselves). Accordingly, Parker's RICO claims are due to be dismissed for failure to adequately allege proximate causation.  <u>See</u> <u>Ray</u>, 836 F.3d at 1351 (footnote omitted) (affirming the dismissal of plaintiffs' "civil RICO complaint because it failed to adequately plead proximate cause" after noting that "[t]here [was] no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause").

Moreover, "[p]redicate acts based on fraud must be pleaded with increased specificity under Federal Rule of Civil Procedure 9(b)." <u>Chi v. MasterCard Int'l, Inc.</u>, Civil Action File No. 1:14–CV–614–TWT, 2014 WL 5019917, at \*3 (N.D. Ga. Oct. 7, 2014) (footnote omitted); <u>see also</u> <u>Yandell v. Christensen</u>, Case No. 3:16-cv-1028-J-39MCR, 2017 WL 7371183, at \*1 (M.D. Fla. Aug. 18, 2017) (citations omitted). "Rule 9(b) requires that [Parker] demonstrate (1) the precise statements or misrepresentations made, (2) when, where, and by whom the statement was made,

(3) how the statement misled [him], and (4) what the defendants gained from the misrepresentation." <u>Chi</u>, 2014 WL 5019917, at *3 (footnote omitted). "In a case involving multiple defendants, the complaint must not lump together all of the defendants, as the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>Crossdale v. Burandt</u>, No. 2:13-cv-877-FtM-29DNF, 2015 WL 1277829, at *3 (M.D. Fla. Mar. 20, 2015) (quoting <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 F. App'x 136, 139 (11th Cir. 2011) (per curiam) (unpublished)). "In sum, the [p]laintiff must set forth in the complaint as to each [d]efendant the 'who, what, when, where and how' about the fraud that took place." <u>Solomon v. Blue Cross & Blue Shield Ass'n</u>, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008) (quoting <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1262 (11th Cir. 2006)).

Parker's "RICO claims fall short of this standard." <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1381 (11th Cir. 1997) (per curiam). Nam Dae Mun correctly notes that Parker "does not identify the precise identification documents [defendants] knowingly used, attempted to use, and/or accepted as evidence of authorized employment, knowing it to be fraudulent" and "completely fails to provide any dates, approximate or otherwise, indicating when [defendants] purportedly used, attempted to use, and/or accepted any identification documents," except to say that the conduct occurred before, during, and after his employment. [Doc. 24-1 at 16 (citations omitted)]. Instead, Parker's amended complaint simply

tracks the language of the statutes he relies upon, "making the very formulaic recitations that the [] Supreme Court has long deemed insufficient."   Id. at 17 (citations omitted)].[15]

Additionally, Parker's amended complaint is replete with conclusory allegations lacking in factual support.  As Olé points out, Parker fails to include facts that show "how a purported 'preference' [for Hispanic undocumented workers] was made known, or how the 'conspiracy' to place undocumented workers was carried out"; that "would indicate when or how [Hispanic undocumented] workers were placed with the[] client[ defendants], or how the client[ defendants] manifested knowledge or consent"; or that describe how the client defendants encouraged Diverse to supply them with undocumented workers.[16]  [Doc. 21-1 at 14-15 (citations

---

[15] Nam Dae Mun also asserts that Parker's amended complaint is a "shotgun pleading which impermissibly attempts to incorporate previous paragraphs by reference in a fraud claim."  [Doc. 24-1 at 15 n.3 (quoting McCray v. BAC Home Loan Servicing, L.P., CIVIL ACTION NO. 1:10-CV-2219-JEC-ECS, 2010 WL 11647286, at *3 (N.D. Ga. Dec. 14, 2010), adopted by 2010 WL 13319294, at *1 (N.D. Ga. Jan. 24, 2011) ("finding it improper to plead fraud claim by 'incorporating all averments of the previously numbered paragraphs'")].

[16] While Parker asserts that "Diverse sent dozens of its undocumented temporary employees to [the client defendants] at their request," without providing any additional information about these alleged requests, [Doc. 7 at 12 ¶¶ 54-56 (citations omitted)], he cites three exhibits to support these allegations, but each of these exhibits is merely a list of employees sent to the client defendants, containing no information about the listed employees' lack of adequate documentation or any requests made by the client defendants to receive these employees, see [Doc. 8 at 1-31].

omitted)].   Rather, the "general conclusory allegations [employed in Parker's amended complaint] do not conform to the heightened pleading requirements for fraud claims." <u>Am. United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1064 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b)); <u>see also</u> <u>id.</u> at 1065 (noting that plaintiff's RICO claims based on two predicate acts related to fraud were subject to dismissal for failure to satisfy the particularity standard).

Moreover, Parker fails to adequately plead a RICO conspiracy claim.  "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant[s] agreed to the overall objective of the conspiracy; or (2) by showing that the defendant[s] agreed to commit two predicate acts."  <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1293 (11th Cir. 2010) (citation and internal marks omitted).   Here, Parker merely "offer[s] conclusory statements," <u>id.</u>, that the defendants "conspired" to commit the predicate acts, <u>see</u> [Doc. 7 at 3, 20-22 ¶¶ 90, 94-97].  As Diverse notes, Parker "has completely failed to allege any agreement to commit a conspiracy or to commit a pattern of racketeering activity" and "has also completely failed to allege any particularized dates regarding the creation of such an agreement or regarding when the other [d]efendants knowingly and willfully joined the conspiracy." [Doc. 16-1 at 20 (footnote omitted)].  Accordingly, Parker has failed to plead his RICO claims with particularity.  <u>See</u> <u>Yandell</u>, 2017 WL 7371183, at *5 (footnote omitted) (concluding that plaintiffs' "allegations fail[ed] to state a RICO

claim" where "[n]otably absent from [p]laintiffs' allegations [were] the precise statements that each particular [d]efendant made, how they personally engaged or agreed to engage in [the] . . . fraud, when the conduct occurred, or how the parties benefited from the scheme"). Therefore, it is **RECOMMENDED** that defendants' motions to dismiss, [Docs. 16, 21, 24, & 26], be **GRANTED** as to Parker's federal and state RICO claims.

### iii.   IIED Claims

Although, as previously noted, Parker has not enumerated an IIED claim in a specific cause of action, he mentions this claim in the first paragraph of his amended complaint. <u>See</u> [Doc. 7]. Defendants argue that this claim is due to be dismissed because he has completely failed to set forth any factual allegations to support it, and mere termination of employment is insufficient. [Doc. 16-1 at 12-15; Doc. 21-1 at 18-19; Doc. 24-1 at 20-22; Doc. 26 at 4-5]. The Court agrees.

"To maintain a claim of [IIED] under Georgia law, [Parker] must allege that (1) the defendant[s'] conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress suffered was severe." <u>Bryant v. JP Morgan Chase Bank</u>, CIVIL ACTION FILE NO. 4:17-CV-84-HLM-WEJ, 2017 WL 9439157, at *6 (N.D. GA. July 28, 2017), adopted by 2017 WL 9439106, at *3 (N.D. Ga. Sept. 26, 2017) (citation omitted); <u>see also</u> <u>Long v. United Natural Foods, Inc.</u>, CIVIL

33

ACTION NO. 1:13-CV-2208-MHS-ECS, 2014 WL 11930617, at *3 (N.D. Ga. May 12, 2014), adopted by 2014 WL 12013426, at *2 (N.D. Ga. June 16, 2014) (citations omitted). "Georgia courts have found liability for IIED only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Bailey v. Experian Info. Sols., Inc., CIVIL ACTION FILE NO.: 1:16-CV-789-MHC-JCF, 2016 WL 9558951, at *6 (N.D. Ga. Dec. 9, 2016), adopted by 2017 WL 3836115, at *1 (N.D. Ga. Jan. 9, 2017) (citation and internal marks omitted). "The standard for an [IIED] claim is very high, and the burden on the plaintiff is a stringent one." Johnson v. MidFirst Bank, Civil Action No. 1:14–CV–0573–CC, 2014 WL 4311272, at *4 (N.D. Ga. Sept. 2, 2014) (citation omitted).

"Generally, Georgia law does not consider adverse employment actions 'extreme or outrageous.'" Green v. ADCO Int'l Plastics Corp., 1:17-cv-337-WSD-LTW, 2018 WL 739794, at *9 (N.D. Ga. Feb. 7, 2018) (citations omitted). "[C]ases applying Georgia law have held that an alleged retaliatory termination, unaccompanied by additional allegations of 'extreme and outrageous' conduct, is insufficient to state a claim for IIED." Long, 2014 WL 11930617, at *5 (collecting cases). Thus, "[t]he mere termination of employment does not authorize a recovery for [IIED]." Amstadter v. Liberty Heathcare Corp., 503 S.E.2d 877, 880 (Ga. 1998) (citation and internal marks omitted); see also Clark v. Coats & Clark, Inc., 990 F.2d

1217, 1229 (11th Cir. 1993) (citations omitted) ("Georgia courts have held that an employer's termination of an employee—however stressful to the employee—generally is not extreme and outrageous conduct."); <u>Jarrard v. United Parcel Serv., Inc.</u>, 529 S.E.2d 144, 147 (Ga. Ct. App. 2000).

The allegations in Parker's amended complaint "are plainly insufficient to state a plausible claim because they fail to identify particular conduct by [defendants] that supports an IIED claim, much less conduct of an extreme and outrageous nature." <u>Bailey</u>, 2016 WL 9558951, at *6 (citation omitted); <u>see also</u> <u>Bryant</u>, 2017 WL 9439157, at *7 (dismissing plaintiffs' IIED claim where they "failed to allege intentional or reckless conduct by defendant that was extreme or outrageous on a level comparable to that previously found to meet the pleading standard in Georgia"). As previously noted, he does not identify any specific conduct by defendants in support of this claim, <u>see generally</u> [Doc. 7], and to the extent that he relies on his alleged retaliatory termination, such conduct, standing alone, is insufficient to warrant relief, <u>see</u> <u>Taylor v. FES Mgmt., Inc.</u>, CIVIL ACTION NO. 1:07-CV-2589-GET-CCH, 2008 WL 11407374, at *2 (N.D. Ga. Mar. 6, 2008), adopted by 2008 WL 11407345, at *1 (N.D. Ga. Mar. 28, 2008). Therefore, it is **RECOMMENDED**

that defendants' motions to dismiss, [Docs. 16, 21, 24, & 26], be **GRANTED** as to Parker's IIED claims.[17]

## B.   <u>Motions for Sanctions, [Docs. 27 & 28]</u>

Diverse and Nam Dae Mun move for sanctions against Parker and his counsel pursuant to Rule 11(c) of the Federal Rules of Civil Procedure.   [Docs. 27 & 28]. Diverse argues that Parker's "claims against the [c]lient[] [defendants] are completely without merit and are clearly a bad faith attempt to harass Diverse and its [c]lients," noting that Parker and his counsel were alerted to deficiencies in his original complaint in Diverse's first motion to dismiss, but then filed an amended complaint without curing those deficiencies while at the same time adding claims against the client defendants that likewise were deficient.   [Doc. 27-1 at 1-2, 12-20]. Nam Dae Mun similarly argues that sanctions are warranted "based upon [Parker's] improper attempt to bring claims against [it] for the purpose of extorting its vendor-- Diverse . . ., straining Nam Dae Mun's resources and unlawfully harassing Nam Dae Mun" as Parker's "claims against Nam Dae Mun are completely without merit and are clearly a bad faith abuse of litigation."   [Doc. 28-1 at 1-2].   Accordingly,

---

[17] As Diverse and Nam Dae Mun point out, [Doc. 16-1 at 2 n.1; Doc. 24-1 at 22-23], Parker's prayer for relief seeks attorneys' fees pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and liquidated damages pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), [Doc. 7 at 22-23], but allegations related to these statutes do not appear anywhere else in the amended complaint, <u>see generally</u> [Doc. 7].  Accordingly, it is **RECOMMENDED** that these requests be **DENIED**.

Diverse and Nam Dae Mun "request[] this Court [to] levy sanctions upon [Parker] and [his] counsel in an amount needed to deter similar future conduct, including an award of attorneys' fees . . . for the cost of defending this action." [Doc. 27-1 at 21 (footnote omitted); Doc. 28-1 at 20 (footnote omitted)].[18]   As with defendants' motions to dismiss, Parker has failed to respond to the motions for sanctions; therefore, the motions are deemed to be unopposed.  See LR 7.1(B), NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion.").

Federal Rule of Civil Procedure 11 provides in relevant part:

By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

---

[18] Diverse and Nam Dae Mun have each attached to their motions affidavits sworn by their counsel stating that they served upon Parker a letter and a copy of their motions for sanctions under Rule 11 advising him of their intent to file the instant motions, and that 21 days have passed with no action or response by Parker.  [Doc. 27-2 (Clayton Decl.) at 3 ¶¶ 3-5, 6-34; Doc. 28-2 (McElrath Decl.) ¶¶ 3-5; Doc. 28-3]; see also Fed. R. Civ. P. 11(c)(2) (explaining that a motion for sanctions "must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets").

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).   "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998) (footnote omitted); see also Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002) (citation omitted).   "Rule 11(c) authorizes a court to impose appropriate sanctions on an attorney or party who has violated Rule 11(b)." Tucker v. U.S. Small Bus. Admin., Civil Action File No. 1:09–CV–2723–TWT, 2010 WL 925176, at *3 (N.D. Ga. Mar. 8, 2010) (citation omitted).   In determining whether to impose Rule 11 sanctions, the Eleventh Circuit employs "a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." Baker, 158 F.3d at 524 (footnote omitted); Isaac v. Am. Intercontinental Univ., Civil Action No. 1:05-CV-2839-JEC, 2007 WL 1959201, at *3 (N.D. Ga. June 28, 2007) (citations omitted). Rule 11 sanctions are warranted:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; *or* (3) when the party files a pleading in bad faith for an improper purpose.

Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 440 F. Supp. 2d 1256, 1266 (N.D. Ala. 2006) (citation omitted).

Rule 11 imposes upon attorneys the "burden of investigating both the factual and legal bases for the claims they assert in papers addressed to the court, and of ascertaining that there is a reasonable basis for maintaining the action or position taken in the papers." Patterson v. Aiken, 111 F.R.D. 354, 355 (N.D. Ga. 1986), aff'd, 841 F.2d 386 (11th Cir. 1988) (per curiam). "The purpose of Rule 11 is to reduce frivolous claims, defenses, or motions and to deter costly meritless maneuvers, thus avoiding unnecessary delay and expense in litigation." Haaf v. Flagler Constr. Equip., LLC, CASE NO. 10-62321-CIV-WILLIAMS/SELTZER, 2011 WL 13217104, at *1 (S.D. Fla. Nov. 9, 2011) (citations omitted). Therefore, "Rule 11 allows courts to order a sanctioned party to pay the prevailing party its reasonable expenses and attorneys' fees incurred as a direct result of the violation, if an order to that effect is warranted for deterrence." Noe v. Interstate Brands Corp., 188 F.R.D. 513, 515 (S.D. Ind. 1999) (citations omitted); see also Neville v. McCaghren, CV 617-075, 2019 WL 97836, at *5 (S.D. Ga. Jan. 3, 2019) (citations omitted) ("Rule 11 sanctions – including monetary sanctions and attorney's fees – may be awarded upon a showing that the offending party filed an objectively unreasonable motion or case.").

After Parker filed his original complaint against Diverse in this action, asserting claims of retaliation in violation of Title VII and racketeering in violation of

RICO and Georgia RICO, [Doc. 1], Diverse filed a partial motion to dismiss, [Doc. 6], arguing that Parker failed to satisfy the heightened particularity standard for his RICO claims based on fraud and that Parker lacked standing to bring his claims because he could not satisfy the proximate cause element, [Doc. 6-1 at 8-25].[19]   As permitted by Federal Rule of Civil procedure 15(a), Parker filed an amended complaint within 21 days after Diverse filed its motion to dismiss.  [Doc. 7]; see also Fed. R. Civ. P. 15(a)(1)(B).   In his amended complaint, Parker added the client defendants and asserted two distinct causes of action: in Count I, a claim for retaliatory discharge in violation of Title VII, and in Count II, a claim for racketeering in violation of RICO.  [Doc. 7 at 1, 15-22 ¶¶ 71-99].  However, Parker did not cure the deficiencies identified in Diverse's motion to dismiss the original complaint, and his amended complaint presented additional problems warranting dismissal of his claims, as the foregoing discussion shows.

"Sanctions may be appropriate when the plain language of an applicable statute and the case law preclude relief."  Baker, 158 F.3d at 524 (footnotes omitted).

---

[19] Diverse also argued that Parker's federal RICO claim based on a violation of 18 U.S.C. § 1028(a)(4) failed because he did not specify the identification documents used to defraud the United States except to reference I-9 forms throughout the complaint, which did not constitute identification documents.  [Doc. 6-1 at 9, 14-16]. Additionally, Diverse moved to dismiss Parker's Title VII race discrimination claim, [id. at 7-8], although no such claim was clearly presented in Parker's original complaint, see generally [Doc. 1].

As previously discussed, Parker cannot bring a Title VII retaliation claim against any of the client defendants because he has not plausibly alleged that they were his employers and he has not exhausted his administrative remedies against them, and Parker's counsel did not even attempt to support this claim by filing responses in opposition to defendants' motions to dismiss, each of which raised these arguments. See [Doc. 16-1 at 6 n.5; Doc. 21-1 at 6-7; Doc. 24-1 at 8-13; Doc. 26 at 3].  Parker, therefore, could not state a plausible retaliation claim against the client defendants, and sanctions against his counsel for failure to comply with Rule 11(b)(2) are appropriate since his Title VII claims against the client defendants are "unwarranted by existing law."  Chaplin v. Du Pont Advance Fiber Sys., 124 F. App'x 771, 775 (4th Cir. 2005) (per curiam) (unpublished); see also Jones v. Alta Colls., Inc., CIVIL ACTION NO. 1:08-CV-1027-CAM-RGV, 2008 WL 11322963, at *8 (N.D. Ga. Nov. 21, 2008), adopted by 2009 WL 10671831, at *2 (N.D. Ga. Feb. 12, 2009) (citations omitted) ("[Plaintiff's] pursuit of Title VII claims without satisfying the conditions precedent to suit [] warrants Rule 11 sanctions."); Fed. R. Civ. P. 11(c)(5)(A) ("The court must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)[.]").

Moreover, Parker was put on notice by Diverse's motion to dismiss his original complaint that he was required to satisfy the proximate cause element for his RICO claims beyond merely asserting that he was terminated for opposing the alleged

racketeering activity, see [Doc. 6-1 at 16-19, 23-25], and that his fraud-based RICO claims had to satisfy Rule 9's particularity standard, [id. at 11-15, 21-23], but Parker retained his deficient RICO claims in his amended complaint without improving his allegations, see [Doc. 7].  An attorney has a "continuing obligation to make inquiries," and sanctions may be imposed where, as here, an attorney continues "'insisting upon a position after it is no longer tenable.'"  Battles v. City of Ft. Myers, 127 F.3d 1298, 1300 (11th Cir. 1997) (per curiam) (citation omitted).  Parker's counsel's continued pursuit of these meritless claims after Diverse's motion notified him of their deficiencies and despite having sufficient time to research the issues and either correct the errors or withdraw the claims, merits sanctions in this case, particularly since he did not respond to the Rule 11 letter and the motions for sanctions are unopposed.

Parker's amended complaint also suffers from apparent drafting errors that made it difficult to ascertain the precise claims being brought against defendants. For example, as previously discussed, the first paragraph of Parker's amended complaint references claims for IIED and violations of Georgia RICO, but these claims are not further discussed in the amended complaint and they are lacking any factual support.  See [Doc. 7 at 1-2].  Additionally, Parker's prayer for relief seeks attorney's fees and liquidated damages under the Fair Labor Standards Act and the Age Discrimination in Employment Act, even though Parker has not asserted any

causes of action under these statutes, <u>see</u> [<u>id.</u> at 23],[20] and his second cause of action ends mid-sentence, <u>see</u> [<u>id.</u> at 22 ¶ 99].  Moreover, after filing his amended complaint, Parker has completely failed to take any further action in this case, including by filing responses to any of the defendants' four motions to dismiss or the two motions for sanctions.  If this Report and Recommendation is adopted, Parker will be left to proceed only on his Title VII claim for retaliation against Diverse, which Diverse has not moved to dismiss, <u>see</u> [Doc. 16-1 at 8 n.6], and each of his other claims will be dismissed for failure to state a plausible claim for relief.

Although sanctions are warranted against Parker's counsel under Rule 11(b)(2),[21] "Rule 11 does not permit sanctioning a client . . . when the basis for the

_____

[20] Diverse notes that these issues may be attributable to drafting errors, with irrelevant text being "left over from cutting and pasting from another document." [Doc. 16-1 at 2 n.1].

[21] Diverse and Nam Dae Mun also argue that Parker's claims against the client defendants were brought for the improper purpose of harassing the defendants and harming the relationship between Diverse and its clients, and that sanctions are therefore warranted under Rule 11(b)(1) as well.  <u>See</u> [Docs. 27 & 28]; <u>see also</u> Fed. R. Civ. P. 11(b)(1).  They argue that since "there is no legal or factual basis to hold [the client defendants] accountable to [Parker's] claims," the "only possible purpose in adding [them] to this case is nothing more than a clear attempt to harass, cause unnecessary delay, [and] needlessly increase the cost of litigation."  [Doc. 27-1 at 20-21 (last alteration in original) (citation and internal marks omitted)]; <u>see also</u> [Doc. 28-1 at 19 (citation omitted)].  "Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings," <u>Lomax v. Ruvin</u>, CASE NO. 09-23293-CIV-UNGARO, 2011 WL 13267206, at *5 (S.D. Fla. Aug. 19, 2011), adopted by 2011 WL 13267163, at *1 (S.D. Fla. Sept. 22, 2011) (citation omitted), but an improper purpose "may not be shown **only** by knowing

sanction is that the pleading was legally frivolous." Cook-Benjamin v. MHM Corr. Servs., Inc., CIVIL ACTION NO. 1:11-cv-04086-JOF, 2013 WL 12096513, at *3 (N.D. Ga. Dec. 3, 2013), aff'd, 571 F. App'x 944 (11th Cir 2014) (per curiam) (unpublished) (citation and internal marks omitted). "Typically, sanctions are levied against a client when he misrepresents facts in the pleadings." Lopez v. City of W. Miami, Case No.: 1:14-cv-23293-UU, 2015 WL 12978166, at *2 (S.D. Fla. Sept. 16, 2015), aff'd, 662 F. App'x 733 (11th Cir. 2016) (per curiam) (unpublished) (citation and internal marks omitted). On the present record, the Court cannot determine whether Parker misrepresented the facts contained in the amended complaint. See Jones, 2008 WL 11322963, at *9 n.12 (explaining that although sanctions were warranted as to plaintiff's counsel, the Court would not impose sanctions against the plaintiff herself "without more concrete evidence" that she made an actual, knowing misrepresentation). In any event, Diverse and Nam Dae Mun explicitly state that their motions for sanctions are not based on factual inaccuracies, but on legal insufficiencies. [Doc. 27-1 at 2 ("Diverse vehemently . . . disputes the facts alleged by [Parker]. However, sanctions are not appropriate because of that disagreement —

―――――――――――――――

pursuit of a meritless claim," Teno v. Iwanski, 464 F. Supp. 3d 924, 953 (E.D. Tenn. 2020) (citation omitted). This is not a case in which Parker has received repeated adverse rulings, and the mere fact of his filing an amended complaint asserting meritless claims against the client defendants is insufficient to show that Parker had an improper purpose such as would warrant the imposition of sanctions pursuant to Rule 11(b)(1).

they are appropriate because even if [Parker's] factual allegations were true . . ., his claims are wholly and completely legally deficient as a matter of law."); Doc. 28-1 at 2-3 (same)].

Therefore, the undisputed record before the Court supports imposing sanctions for the conduct of Parker's counsel, but not Parker himself, and it is **RECOMMENDED** that if this Report and Recommendation is adopted, monetary sanctions in the form of attorney's fees and costs be imposed against Parker's counsel pursuant to Rule 11 for the time counsel for Diverse and Nam Dae Mun spent preparing and filing their motions to dismiss Parker's amended complaint, as well as the time spent on preparing and filing their motions for sanctions.[22]  See Donaldson v. Clark, 819 F.2d 1551, 1557 (11th Cir. 1987) (footnote and citation omitted) (explaining that "the sanctions most commonly imposed are costs and attorneys' fees" and that the "imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11").

---

[22] Accordingly, Diverse and Nam Dae Mun each shall file within **TWENTY-ONE (21) days** a declaration of counsel supporting their respective motions for attorney's fees and costs incurred in defending the claims in this action that are recommended to be dismissed.  Parker's counsel shall file any response opposing the amount of the attorney's fees and costs sought within **FOURTEEN (14) days** after service of the declaration in support of the motion, and should he fail to file a response within the time allowed, the amount requested by Diverse and Nam Dae Mun will be deemed to be unopposed.  See LR. 7.1(B), NDGa.

### III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Diverse's partial motion to dismiss, [Doc. 16], and the client defendants' motions to dismiss, [Docs. 21, 24, & 26], be **GRANTED**, and that the motions for sanctions filed by Diverse and Nam Dae Mun, [Docs. 27 & 28], be **GRANTED**.

**IT IS SO RECOMMENDED** and **DIRECTED** this 23rd day of December, 2020.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

46